UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**MICHAEL BRUNO**                                                                         **Plaintiff**

vs.                                                                           **Civil Action No. 2:06CV163**

**RIH ACQUISITIONS MS I, LLC d/b/a
BALLY'S RESORTS, RIH ACQUISITION
MS II, LLC, d/b/a BALLY'S CASINOS and
JAMES KINEE**                                                    **Defendants**

## ORDER

This cause comes before the court on the motion of defendants for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Michael Bruno has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion should be granted in part and denied in part.

In this case, plaintiff Michael Bruno, former Regional Director of Hospitality at Bally's Casino, seeks recovery under federal and state law for his allegedly unlawful discharge. Plaintiff first began working for Bally's in 1995 as Director of Hotel Operations, and he later assumed the duties of Director of Hospitality. Plaintiff has presented deposition testimony that he performed his duties very competently, while defendants maintain that his performance was substandard in areas such as maintaining kitchen cleanliness and "managerial performance." Bally's finally discharged plaintiff on May 12, 2006, allegedly due to his poor work performance. Feeling aggrieved, plaintiff filed a charge of discrimination with the EEOC, and he filed the instant

1

lawsuit on September 26, 2006.

In his complaint, plaintiff alleges that he was discharged in retaliation for opposing defendants' attempts to violate the Age Discrimination in Employment Act ("ADEA") and/or for reporting defendants' violation of state and federal environmental laws. Plaintiff seeks recovery for the former under federal law, and he seeks recovery for the latter under state law. Defendants have presently moved for summary judgment, contending that no genuine issue of fact exists regarding plaintiff's right to recover under any of his claims. The court first considers defendants' motion as it relates to plaintiff's ADEA retaliation claims. To establish a *prima facie* case of retaliation under the ADEA, a plaintiff must show: (1) that he engaged in activity protected by the ADEA; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. *See Webb v. Cardiothoracic Surgery Assoc.*, 139 F.3d 532, 540 (5th Cir. 1998). In contending that plaintiff has failed to establish a *prima facie* case of retaliation, defendants focus on the first requirement quoted above.

In determining whether an employee has engaged in an activity protected by the ADEA, it must be shown that he either opposed a practice prohibited by the ADEA or has participated "in any manner" in a proceeding under the ADEA. *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226 (5th Cir. 1996). Plaintiff's ADEA retaliation claims in this case are "opposition," rather than "participation" claims, inasmuch as he maintains that he was discharged for opposing efforts to discriminate against a prospective employee on the basis of his age. To satisfy the opposition requirement, a plaintiff need only show that he had a "reasonable belief that the employer was engaged in unlawful employment practices." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d

2

337, 349 (5th Cir. 2007).[1]

Plaintiff alleges that he was fired for resisting pressure from James Kinee, Bally's Executive Regional Director of Hospitality, to not hire fifty-year-old Nick Luciano as a buffet manager, due to his age. Specifically, plaintiff alleges in his brief that, in late April, 2006, the following events occurred:

> Bruno told Kinee that he had found a candidate for the supervisory position in the buffet. Kinee told Bruno "let me look at the application." He looked at it, he said, "how old is this guy?" I said, "I don't know, fifty or fifty-five, maybe a little bit older. I don't know." And he goes, "No, we don't want another - he's too old." "We don't want another squatter like Mike Sindelar." Bruno told Kinee, "that's not right, this guy is very qualified, we have been looking for a long time for someone this good for this position." Kinee stated, "too bad." Kinee then rudely threw the resume at Bruno and walked out.

Defendants argue that plaintiff's allegations do not suffice to demonstrate that he engaged in a protected activity in this case, but the court does not agree. In discussing the scope of protected activity under the "opposition" clause, Judge David Bramlette wrote as follows:

> The prohibition of retaliation protects employees who use informal methods to voice their complaints, as well as those who file formal charges. Such informal means include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." However, an employee's statement cannot be deemed to be in opposition to an unlawful employment practice unless it refers to and opposes a specific practice of the employer.

*Alack v. Beau Rivage Resorts, Inc.*, 286 F. Supp. 2d 771, 774 (S.D. Miss. 2003).

In the court's view, the fact that plaintiff's remarks were allegedly made directly in the

---

[1] It should be noted that *Richardson* was a Title VII retaliation case, but the Fifth Circuit has acknowledged that the anti-retaliation provisions of title VII and the ADEA are nearly identical and has therefore construed the provisions consistently. *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 252 n.18 (5th Cir. 1997).

context of discussing whether to hire Luciano and sought to oppose Kinee's attempts to discriminate against Luciano on the basis of his age clearly supports a conclusion that plaintiff engaged in protected activity in this case. Indeed, the court does not find this to be a particularly close issue, and the Fifth Circuit authority cited by defendants on this issue is clearly distinguishable.[2] The court therefore concludes that plaintiff engaged in a protected activity in this case.

There is no doubt that plaintiff suffered an adverse employment action, and he has, in the court's view, managed to establish fact issues regarding whether a causal connection exists between his protected activity and the adverse employment action which he suffered. In so concluding, the court would note that a close time proximity exists between the protected activity and his firing. Indeed, Bruno estimated in his deposition that his conversation with Kinee regarding Luciano's hiring occurred "maybe about a week before my termination." This is a very significant time proximity, particularly considering that plaintiff's employment at Bally's lasted over a decade. Moreover, many of the same factors discussed below which support a finding that defendants' stated non-discriminatory reason was pretextual also support a finding of a causal connection within the context of the plaintiff's *prima facie* case. The court therefore concludes that plaintiff has managed to establish a *prima facie* case of retaliation in this case.

---

[2]Defendant relies upon *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007), where the Fifth Circuit found that the plaintiff had failed to establish that she engaged in protected activity by requesting that her supervisor refrain from using the phrase "ghetto children." The Fifth Circuit found, however, that the plaintiff could not have reasonably believed that the "conduct described in the email constituted an unlawful employment practice under Title VII." *Id.* In this case, by contrast, it can scarcely be disputed that attempts by a manager to influence another manager not to hire an employee on the basis of his age constitutes an unlawful employment practice under the ADEA.

Once the employee establishes a *prima facie* retaliation claim, the burden of production shifts to the employer who must show a legitimate, non-retaliatory justification for its action. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). The burden then shifts back to the employee "to establish that the employer's permissible reason is actually a pretext for retaliation." *Septimus v. Univ. of Houston*, 399 F.3d 601, 607 (5th Cir. 2005). In retaliation cases where, as here, the plaintiff relies solely on a "pretext" theory, the plaintiff is required to establish that he would not have been discharged "but for" the protected activity. *Strong v. Univ. HealthCare Sys.*, 482 F.3d 802, 806 (5th Cir. 2007).[3]

In this case, defendants have articulated a "a legitimate, non-retaliatory justification" for terminating plaintiff, but only in the vaguest terms. In their brief, defendants submit that:

> Defendants have met their burden of producing a nondiscriminatory reason for plaintiff's termination, plaintiff's poor work performance. This was the reason that plaintiff admitted to being told when he was discharged, and this was the reason given by Mr. Kinee after plaintiff's discharge.

The record excerpts cited by defendants in support of their stated non-retaliatory reason are

---

[3]The court would note that plaintiff would have had even stronger arguments if he had seen fit to raise mixed-motive arguments in his summary judgment brief, but, for reasons that are not clear to this court, he did not do so. Fifth Circuit authority strongly suggests that the mixed-motive option is available in retaliation cases. *See, e.g. Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 334 (5th Cir. 2005), *Block v. Kelly Services, Inc.*, 2006 WL 2571012, at *3 (5th Cir. 2006). However, the Fifth Circuit made it clear in *Strong* that this is an option which the plaintiff must actually raise at the summary judgment stage in order to have the option applied at that time. *Strong*, 482 F.3d at 805 (noting that the plaintiff's claims were based solely on a pretext theory and thus applying "but for" causation standard at summary judgment stage). *See also Septimus v. Univ. of Houston*, 399 F.3d 601, 607 n.7 (5th Cir. 2005).
  The court would note, however, that plaintiff has recently submitted proposed jury instructions which include a mixed-motive option. It is unclear whether this is sufficient to permit this court to apply a mixed-motive analysis at the summary judgment stage, although it clearly seems sufficient to permit the jury to consider the issue at trial. Regardless, this court concludes that summary judgment is inappropriate even under a pretext theory, and it is accordingly unnecessary to resolve this issue.

scarcely more specific than their brief. That is, defendants cite plaintiff's deposition testimony, where he indicated that he was told that his "walk-throughs" had not improved, but plaintiff made it clear that he was given no specifics in this regard and that he disagreed with this evaluation of his performance.

Defendants also cite Kinee's deposition in support of its "poor work performance" justification, but this testimony was similarly vague and non-specific in nature. That is, Kinee testified as follows:

> Q: Why was Michael Bruno fired?
> A: For reasons I've just stated. There were issues and - - there were performance issues and there were items at Bally's that just couldn't seem to get corrected or fixed.

When asked to give specific reasons for Bruno's termination, Kinee simply repeated his "poor work performance" answer. Kinee's description of the meeting where the decision was made to terminate Bruno is similarly unenlightening:

> A: Well, the conversation that took place happened between, as I said, the three people: myself, Sean and Michael Frawley. I was in Michael's office, and Mr. Frawley asked me, "What's going on? How is Bruno doing? Are we getting any better?" I gave him a nonverbal answer, and I kind of grimaced and shrugged. Then he says, "Well, we need to talk about it." And Sean was there, and Sean said that things don't seem to be getting any better. And then in the conservation, he said "What's going on?" And I said, "Well, you know, we still have some lingering and outstanding issues. We can't seem to get them done. I don't know if Michael is," Michael meaning Michael Bruno, "is now unmotivated or if he gave up. And we just can't seem to be getting anywhere." At that point, I can't say for certain who threw the option out there, but the option certainly was put out there that maybe we should move on.

In the court's view, defendants' persistent reluctance to engage in specifics regarding exactly why plaintiff was terminated could lead a reasonable trier of fact to conclude they have something to hide in this regard. Indeed, Kinee's own description of the crucial conference

where it was decided to fire Bruno, with its vague references and nonverbal gestures, seems more suited to a game of charades than an employee termination conference.

Defendants do cite "walkthrough" and "kitchen cleanliness" issues elsewhere in their brief as supporting plaintiff's termination, but Kinee certainly did not appear eager to cite these alleged bases for termination in his deposition. Moreover, plaintiff made it clear in his deposition that he was not provided with specifics in this regard when he was terminated. It is thus apparent that defendants have given a very vague and generalized reason for terminating plaintiff, and, in the court's view, it is a considerably less daunting task for plaintiff to rebut such a vague rationale than if defendants had offered more specific evidence in this regard.

In the court's view, plaintiff has submitted evidence which is sufficient to create fact issues regarding whether the defendants' stated non-retaliatory reason for terminating him was merely a pretext for retaliation. For example, plaintiff notes that Kinee conceded in his deposition that Bally's had a progressive discipline policy, but there is no evidence that Bally's ever formally cited plaintiff for poor work performance or took any other actions against him prior to his termination. Moreover, plaintiff has presented deposition testimony from his former co-worker Michael Smith that plaintiff did a "wonderful, great job." In addition, as noted previously, plaintiff testified that there was a very close time proximity of around a week between his confrontation with Kinee and his termination. In the court's view, this close time proximity, in the context of a lengthy employment at Bally's, serves to create doubt whether his poor work performance was the real reason for his termination.

It is also apparent that Kinee's alleged actions in throwing Luciano's resume could reasonably be interpreted as indicating significant frustration on his part regarding plaintiff's

7

wishing to hire Luciano. In the court's view, while these reasons might conceivably not suffice to rebut a more specific non-retaliatory reason, they do suffice to rebut defendants' vague allegations of "poor work performance" which are largely unsupported by any specific evidence in the record. The court therefore concludes that plaintiff has managed to establish triable fact issues regarding his ADEA retaliation claims.

The court now turns to plaintiff's state law retaliatory discharge claims. In general, Mississippi law recognizes the employment-at-will doctrine, and an employer can therefore not be held liable in tort for firing an employee in most situations. In *McArn v. Allied Bruce-Terminix, Inc.*, 626 So. 2d 603, 607 (Miss. 1993), however, the Supreme Court recognized a cause of action for retaliatory discharge, based upon a public policy exception to the employment-at-will doctrine. *McArn* recognizes a cause of action for retaliatory discharge in two instances: 1) where an employee is fired for refusing to participate in an illegal act; and 2) where an employee is discharged for reporting illegal acts of his employer to the employer or anyone else. *Id.* The Mississippi Court of Appeals has concluded that the *McArn* exception requires that "the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties," *see Hammons v. Fleetwood Homes of Miss., Inc.*, 907 So. 2d 357, 360 (Miss. App. 2004), and the Fifth Circuit has reached a similar conclusion in this regard. *Wheeler v. B.L. Dev. Corp.*, 415 F.3d 399, 404 (5th Cir. 2005).

In this case, plaintiff's *McArn* claims rest upon an incident which occurred in April 2006, shortly before the confrontation between plaintiff and Kinee regarding the hiring of Luciano. Specifically, during a walkthrough inspection at the casino, spilled grease was discovered on the back dock area. According to plaintiff, Kinee ordered that the grease be discarded into a lake

8

which fed into the Mississippi River, contrary to state and federal environmental laws. Plaintiff maintains that he responded that they could not discard the grease into the lake but that Kinee ordered it to be done anyway. It is undisputed that the grease was, in fact, dumped in the lake, and the violation was never reported to environmental authorities. In the court's view, even assuming that this alleged violation of state and/or federal environmental laws was criminal in nature, it can not validly be contended that plaintiff's rather weak opposition to it constituted either "refusing to participate in an illegal act" or "reporting an illegal act" under *McArn*. In the court's view, merely informing a superior that an act is illegal and then doing nothing further to either prevent it from taking place or report it after the fact may not give rise to a *McArn* cause of action. The court therefore concludes that defendants' motion to dismiss plaintiff's state law *McArn* claims is due to be granted.

In light of the foregoing, it is ordered that defendants' motion for summary judgment is granted as to plaintiff's state law retaliatory discharge claims and denied as to plaintiff's ADEA retaliation claims. Plaintiff's motion to amend [47-1] the pre-trial order to assert malicious interference with contract claims against Kinee individually is granted.[4]

SO ORDERED, this the 14th day of January, 2008.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

---

[4]In the court's view, the viability of this claim is very suspect, and it seems doubtful that it will survive a motion for directed verdict at trial. Nevertheless, the claim was asserted in the complaint, and defendants failed to seek dismissal of this claim on summary judgment. The court therefore concludes that plaintiff is entitled to modify the pre-trial order to assert this claim.

9